IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GEORGE WEBB                                                                    PLAINTIFF

v.                          CIVIL NO.        2:10-CV-2032

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                              DEFENDANT

<u>MEMORANDUM OPINION</u>

I.      <u>Procedural Background</u>:

Plaintiff protectively filed his application for supplemental security income (SSI) on

August 7, 2007, alleging disability due to a foot injury (Tr. 97-99, 109). The state agency

denied Plaintiff's application initially and on reconsideration (Tr. 58-59, 70-74). Plaintiff filed a

request for a hearing before an ALJ, which was held on November 20, 2009 (Tr. 13-15, 29-57).

Plaintiff, who was represented by counsel, and a vocational expert (VE) appeared and testified at

the hearing (Tr. 29-57). After considering all of the evidence of record, the ALJ rendered a

decision on May 7, 2009, finding that Plaintiff was not disabled within the meaning of the Act at

anytime during the relevant time period (Tr. 60-69). The decision of the ALJ became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

January 29, 2010 (Tr. 1-4).

Plaintiff was twenty-four years old at the time of the ALJ's decision (Tr. 36, 60-69). He

has a ninth-grade education, and past relevant work experience as a recreational aide and short

order cook (Tr. 38, 52-53).

-1-

II.   **Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary."  *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)©.  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

-2-

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Applicable Facts

Plaintiff was admitted to Sparks Regional Medical Center on July 19, 2007, with a crush fracture to his left foot due to a work injury. Dr. Jones performed an open reduction and internal fixation of the fracture as well as removal of one of the joints of his third toe, thereby shortening his toe. (T. 180). He was discharged on July 21, 2007, with a prescription for Lorcet and instructions to ice and elevate his foot to control swelling. (T.181).

Plaintiff visited the emergency room at Sparks Regional Medical Center on July 30, 2007, with pain following his surgery. The pain medication he was taking was not working adequately, so he was given a prescription for Darvocet-N. (T.168-169).

Plaintiff  had significant swelling of his entire left lower extremity on August 1, 2007. (T.207). On August 17, 2007, Plaintiff presented to River Valley Musculoskeletal Center, where

-3-

he was seen by physician's assistant Benton Loggains. Mr. Loggains noted decreased pain but continued swelling. The pin in his third toe was removed. He suggested that Plaintiff begin ankle passive and active range of motion exercises. (T, 204). He saw Mr. Loggains again on September 4, 2007, because Dr. Jones had a scheduling conflict. He reported that his pain had lessened. However, he had no range of motion in his third toe. Mr. Loggains encouraged him to begin gentle mobilization but warned him that he would never have normal motion. Mr. Loggains also noted that he had diffuse tenderness in his foot. He allowed Plaintiff to very slowly work up to bearing 50% weight in his boot, and he scheduled Plaintiff for physical therapy. Mr. Loggains also refilled his prescription for hydrocodone,. (T. 201). Dr. Jones saw him on September 19,2007, and he noted that Plaintiff was so sensitive to pain since removing the pin that he was reluctant to move it and was "locked down" in his motion. He injected the area and manipulated it, because he felt the pain resulted from immobilization. He warned Plaintiff that he would be permanently stiff in the foot and ankle if he didn't take pain medication and get it moving. (T.202).

A Residual Functional Capacity Assessment was performed by a non treating consultant on September 12, 2007 who determined that the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday. (T. 193-200).

Dr. Jones noted on October 4, 2007, that Plaintiffs range of motion, stiffness, and pain had improved significantly. Consequently, he permitted Plaintiff to proceed to 25-30 pounds weight bearing in his brace. He explained to Plaintiff that he would likely have chronic symptoms, and he prescribed Loret. (T. 203). Dr. Jones examined Plaintiff again on

-4-

November 6, 2007. He was at 50% weight-bearing, and his x-rays showed marked disuse osteopenia. He recommended that Plaintiff progress to full weight-bearing with his brace and then use a spring steel in his shoe. Dr. Jones commented that this was a life changing injury and that he would continue to have pain and soreness. The level of disability was still uncertain, but Dr. Jones indicated it was typically quite significant with this type of injury. He recommended that Plaintiff increase his activity, and he prescribed a shower chair. Because of Mr. Webb's financial situation, the doctor could not offer much more to him. He also indicated that Plaintiff would be disabled for at least a year, and possibly permanently, from manual labor (T.225). On November 20, 2007, Dr. Jones wrote a note indicating that Mr. Webb would be disabled from manual labor for up to a year. (T, 222). Plaintiff returned to Mr. Loggains on December 4,2007. He reported full weight-bearing but was still using crutches. While he had significant relief of his pain, he still required four Hydrocodone per day for pain relief. Mr. Loggains reduced the dosage to wean him off the pain medication. (T.219).

Plaintiff saw Dr. Jones again on March 10, 2008, at which time he reported exquisite tenderness over the most lateral screw. He had paresthesias down his toe with percussion and palpation around the screw, so Dr. Jones decided to remove it. X-rays indicated disuse osteoporosis. (T.216). On June 13,2008, Dr. Jones removed one of the screws in Plaintiff's foot because of exquisite tenderness and neurological dysesthesias. He noted that Plaintiff would continue to have symptoms due to the severity of his injury. (T.213). Plaintiff saw Mr. Loggains on June 24, 2008. He was full weight-bearing without difficulty, and Mr. Loggains said he could gradually return to his normal

activities. His gait was abnormal, however. He recommended range of motion exercises to address the ankle pain that Plaintiff was experiencing. (T. 212).

IV.   **Discussion**:

The ALJ  determined that plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 416.967(a), meaning that he can lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours during an eight-hour work day and stand and walk for at least two hours during an eight-hour workday. (T. 65).

RFC is the most a person can do despite that person's limitations. 20 CFR. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Dr. Jones, the Plaintiff's treating physician and an orthopedic surgeon, opined in November 2007 that the plaintiff's injury was "a life-changing injury that even with an anatomic fixation that we have, he is going to have pain and soreness and it remains to be seen how much disability he will have but it is classic to be significant with this injury in the orthopedic literature

-6-

and in my own experience." (T. 225).  Dr. Jones saw the Plaintiff on June 13, 2008 to remove one of the screws that had been previously surgically implanted.  At that time Dr. Jones noted that the Plaintiff "was exquisietly tender and has neurologic dysesthesias distally over the fifth screw" and that "this was a server midfoot injury and even with the hardware removal, he will go on to have some continued symptoms but at least the acute hardware-related pain, footwear-related problems and the dysesthesias should be resolved." (T. 213). The last time the Plaintiff was seen at River Valley Musculoskeletal Center was June 24, 2008 when he was seen by Benton Loggains, a physician's assistant,  who noted that the Plaintiff "is ambulating full weight bearing without difficulties" and that he was "to gradually return to his normal activities."  Mr. Loggains went on to note that the Plaintiff's "gait has gait disturbance due to this postoperative situation and we are going to evaluate that further when he returns. (T. 212).

It does not appear that the Plaintiff returned to see Dr. Jones and he states that was because of economic problems. The ALJ questioned the Plaintiff about this with the following exchange:

> ALJ: All right. Quick follow up, a little out of order.  Mr. Webb, I've gone through your medical evidence again this morning.  I saw a note in there that you're supposed to, I want to say go back again to River Valley Musculoskeletal Center after June.  Have you been there sine June?

> CLMT: No, sir, I was denied due to the fact that my bill is extremely high, I was turned over to the credit union.

> ALJ: Okay. Okay.  So no other treatments.  Have you been treated anywhere since June of 2008.

> CLMT: No, sir. (T. 33).

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative

-7-

seriousness of a medical problem." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir .1995) and that the "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations." *Cole v. Astrue*, 2009 WL 3158209, 6 (W.D.Ark.) (W.D.Ark.,2009).

However, the ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

Both hypothetical question that the ALJ placed to the VE contained the premise that the Plaintiff could stand for between two to six hours in an eight hour work day. (T. 54). The VE testified to several jobs that would be available to the Plaintiff based upon the ALJ's hypothetical. The VE did express the opinion that if the Plaintiff had to take frequent, unscheduled breaks that no jobs would be available to the Plaintiff. The issue seems to turn on the Plaintiff's ability to stand continuously for a period of up to two hours.

The record does not contain an RFC assessment from any of plaintiff's treating doctors. The only assessment in the file was prepared by a non-examining, consultative doctor who concluded that plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday. (T. 193-200). The ALJ noted that the consultant found that the claimant had the RFC to perform

work a the medium exertional level but he chose to "discount" that opinion because of some of the statements in Dr. Jones' records (T. 67) and the ALJ then made the unsubstantiated determination that the Plaintiff could stand for up to two hours per eight hour work day.

Clearly, the consultant's opinion does not constitute substantial evidence that plaintiff can perform this level of work (*See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence)) especially since the ALJ even discounted the consultant's opinion.

It is clear that the RFC assessment by a treating physician and a specialist may have had great weight with the ALJ. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

The court believes that the ALJ did  rely on a non-examining, non-treating physician. *See Nevland v. Apfel*, 204 F.3d 853 at 858 (relying upon non-examining, non-treating physicians to form an opinion on a claimant's RFC does not satisfy the ALJ's duty to fully and fairly develop the record). *See Dixon v. Barnhart*, 324 F. 3d 997 (2003).

Remand is necessary to allow the ALJ to develop the record further regarding plaintiff's RFC.  *See* 20 C.F.R. §404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

On remand, the ALJ is directed to contact plaintiff's treating doctor and address interrogatories to that physician, asking him to review plaintiff's medical records during the

relevant time period; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**V.**     **Conclusion**:

Based on the foregoing, the decision of the Commissioner is hereby reversed and this case is remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 12th day of January  2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE